UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC KING,                                        Case No. 11-cv-10609

          Plaintiff,                              David M. Lawson
                                                  United States District Judge
vs.

FERROUS PROCESSING & TRADING CO.,                 Michael Hluchaniuk
                                                  United States Magistrate Judge
          Defendant.

and

ERIC KING,                                        Case No. 11-cv-10660

          Plaintiff,                              David M. Lawson
                                                  United States District Judge
vs.

INTERNATIONAL BROTHERHOOD                         Michael Hluchaniuk
OF TEAMSTERS,                                     United States Magistrate Judge

          Defendant.

_____/

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkt. 46, 53)

## I.    PROCEDURAL HISTORY

Plaintiff filed a complaint in Federal District Court against defendant Ferrous Processing &

Trading Co. ("Ferrous") on February 15, 2011, claiming employment discrimination on the bases

of race, color, and age,[1] in violation of Title VII of the Civil Rights Act of 1964 and the Age

---

[1] During his deposition and in his response to defendant's motion for summary judgment,

Discrimination in Employment Act (ADEA). (Dkt. 1). On February 17, 2011, plaintiff also filed a complaint in Federal District Court against defendant International Brotherhood of Teamsters, Local 337 ("the Union"), claiming unfair representation. (Dkt. 1). The Ferrous case was referred to the undersigned on February 17, 2011, by District Judge David M. Lawson. (Dkt. 5). Subsequently, on March 18, 2011, the Ferrous and the Union cases were consolidated. (Dkt. 12). Defendants Ferrous and the Union each filed a motion for summary judgment on December 19, 2011. (Dkt. 46). Plaintiff filed a response to defendants' motions for summary judgment on January 11, 2012. (Dkt. 57). Defendant Ferrous filed a reply to plaintiff's response on January 24, 2012. (Dkt. 59). Plaintiff also filed his own "motion for summary judgment or partial summary judgment"[2] on December 19, 2011. (Dkt. 52). Defendant Ferrous filed a response to this motion on January 9, 2012. (Dkt. 56). This matter is now ready for report and recommendation.

For the reasons below, the undersigned **RECOMMENDS** that defendants' motions to dismiss be **GRANTED** and that plaintiffs' complaint be **DISMISSED** with prejudice.

---

plaintiff also made reference to disability discrimination. However, the only causes of action selected in his form complaint are for discrimination on the bases of race, color, and age, despite the presence of "ADA-defined disability" as an option. (*See* Dkt. 1). Although courts liberally construe the complaints of plaintiffs appearing pro se, courts may not rewrite a complaint to include claims that were never presented. *See Botwright v. U.S. Postal Serv.*, No. 08-12998, 2011 U.S. Dist. LEXIS 9382 at *7 (E.D. Mich. Jan. 12, 2011). Furthermore, in his motions to amend his complaint and pleadings, plaintiff has sought to add negligence as a cause of action, but not disability discrimination. Therefore, the undersigned does not consider disability discrimination a properly stated claim and does not address it in this report and recommendation.

[2] While entitled a motion for summary judgment, the substance of plaintiff's submission constitutes the most recent in a series of five motions to amend the complaint and pleadings. The undersigned has entered a separate order rejecting this motion and does not address it further in this report and recommendation.

II.    **FACTUAL BACKGROUND**

Plaintiff was employed as a yard man/laborer by Ferrous beginning February 16, 2004. (Dkt. 46).  On the morning of August 13, 2009, plaintiff asked Ferrous General Manager Phil Hernandez for permission to leave work early, a request which Hernandez denied.  (Dkt. 46, Ex. 2, Aff. of Phil Hernandez).  Hernandez directed plaintiff to complete an assignment and then report to Operations Supervisor Don Lyons for further work instructions.  (*Id*).  Later that morning, Hernandez received a telephone call from Lyons regarding another request by plaintiff to leave work.  (*Id*).  Hernandez instructed Lyons to deny this request.  (*Id*).  Approximately fifteen minutes later, plaintiff approached Lyons to inform him that he had given Diana Mortimore, HR Representative, an appointment reminder for Occupational Health Services and needed to leave.  (Dkt. 46, Ex. 3, Decl. of Don Lyons, Decl. of Diana Mortimore).  Upon plaintiff's departure, Lyons called Hernandez a second time to report that plaintiff had left the work yard.  (Dkt. 46, Ex. 2, Aff. of Phil Hernandez).  Hernandez reports that when he called Occupational Health, the office stated that plaintiff did not have a scheduled appointment.  (Dkt. 46, Ex. 3, Decl. of Phil Hernandez).  Plaintiff has offered conflicting statements and evidence regarding his permission to leave work.[3]

---

[3] The undersigned recognizes that plaintiff has produced a document purportedly from a physician at Wayne State University referring plaintiff to Occupational Health for a visit on August 13, 2009.  (*See* Dkt. 68, Ex. 3).  However, this piece of evidence presents authenticity issues, as plaintiff has not submitted an affidavit from the signing physician authenticating it.

Additionally, plaintiff writes in his complaint, "I did not walk off the job and I had a doctor note telling me to go to the doctor's office."  (Dkt. 1).  This note, also entered into evidence, does not designate an appointment date and instead instructs plaintiff to call the office to schedule an appointment.  (*See* Dkt. 46, Ex. 3, Appointment Reminder).  Lastly, during plaintiff's deposition, the following exchange took place:

Q      Okay.  And if Phil Hernandez said he called and they said you didn't have an appointment, that would make sense because you didn't have an appointment?

Plaintiff was discharged from employment on August 13 for this unauthorized work stoppage and for violations of the following Uniform Rules and Regulations: (1) leaving employer's premises during work hours without authorization; (2) insubordination; (3) negligence in the performance of duties; (4) willful disregard of employer's policies and procedures; and (5) stopping work prior to the completion of a shift.  (Dkt. 46, Ex. 2, 3).

Plaintiff then filed a grievance through the Union grievance process challenging this discharge.  (Dkt. 46 at 6).  Norbert Ryan, Business Agent of the Union, requested that Ferrous consider "an act of mercy" and allow plaintiff to return to work.  (Dkt. 46, Ex. 4).  On October 13, 2009, Ferrous and plaintiff agreed to the terms of a "last chance agreement" ("LCA"), whereby plaintiff would be reinstated if he met certain conditions.  (Dkt. 46, Ex. 6).  Plaintiff contests the fact that he "agreed" to the LCA and asserts that he was coerced by the Union's representatives, Kevin O'Neill and Norbert Ryan, into accepting the agreement.[4]  (Dkt. 1; Dkt. 53, Pl.'s Dep. at 73:8-74:5).  The LCA required that the plaintiff comply with the following conditions before he resumed work:

---

A        Right.  But they knew I was sick off the fumes and where I was going.

(Dkt. 46, Ex. 5 at 34:2-6).

  [4] In relevant part, plaintiff's deposition reads,

Q        You said even a few minutes ago for Mr. O'Shea that Mr. Ryan and I gave you, we gave you our opinion that we thought this [last chance agreement] was in your best interest, did we not?
A        Correct.
Q        You used the words coerced.  Did we make you do something you didn't want to do?
A        Well, you said that it was a good deal but I told you I thought it was not a good deal.

. . .

Q        So you signed it on your own free will, did you not?
A        Oh, correct, yes, I did.

(Dkt. 53, Pl.'s Dep. at 73:8-74:5).

(a)  Plaintiff would be placed on FMLA leave;

(b)  Plaintiff would be evaluated by psychiatrist Dr. Jeffrey Kezlarian;

(c)  Plaintiff could return to work after providing a letter by Dr. Kezlarian stating that plaintiff was fit to resume his duties;

(d)  The last chance letter would be in effect for nine months after plaintiff's return from work; and

(e)  During that nine-month period, further violations of any Ferrous work rules would result in immediate termination of plaintiff's employment

(Dkt. 46, Ex. 6).  During his deposition, plaintiff admitted that he understood these terms at the time he entered into the agreement.  (Dkt. 46, Ex. 5 at 36:14-37:14).

Plaintiff was required to be examined by a psychiatrist because of past erratic and bizarre behavior within the workplace.  (Dkt. 46, Ex. 4).  Plaintiff admits that he has suffered from hallucinations and from hearing voices and attributes these symptoms to the inhalation of car and gasoline fumes.  (Dkt. 46, Ex, 5 at 24:5-25:18).  In compliance with the terms of the LCA, plaintiff was evaluated on October 30, 2009, by Dr. Kezlarian, who diagnosed him with "recurrent psychotic behavior" and concluded that plaintiff was unfit to return to work.  (Dkt. 46, Ex. 7).  Dr. Kezlarian explained, "I do not feel that he would be able to return to work reliably, because recurrence of his psychotic illness [is] very likely."  (*Id*).  Plaintiff then sought a second opinion on January 19, 2010, from Dr. Thomas Park, who stated that plaintiff "has made remarkable progress and has regained good reality senses with intensive medication management and psychotherapy.  Mr. King has not demonstrated any hallucinations or delusions what so ever [sic].  Mr. King can return to work as of Sunday, January 24, 2010 without any restrictions."  (Dkt. 46, Ex. 8).

Although the terms of the LCA required him to attain a letter from Dr. Kezlarian certifying his ability to return to work, Ferrous accepted such a certification from Dr. Park. (Dkt. 46). Once an issue with plaintiff's high blood pressure was resolved, he was permitted to return to work on February 15, 2010. (Dkt. 46, Ex. 5 at 39:12-40:2). Plaintiff asserts that Ferrous, in violation of the terms of his FMLA leave (*see* Dkt. 57, Ex. 6, Ex. 7), laid him off and did not assign him to his previous position in the recovery plant (Dkt. 46, Ex. 5 at 40:7-22; Dkt. 57 at 6). Ferrous explains that due to an economic downturn, plaintiff's previous position as a yard man had been temporarily eliminated, as plaintiff did not have enough seniority to overcome the loss of the position. (Dkt. 59, Ex. 1 at ¶¶ 4-9). Ferrous states that plaintiff was not laid off and was instead assigned to a resource recovery technician position as of February 15, 2010.[5] (*Id.* at ¶ 11). Thus, the LCA would be in effect for nine months from that date, or until November 15, 2010.

On April 14, 2010, plaintiff failed to follow proper procedure in the course of processing and preparing vehicles for shredding. (Dkt. 46). In spite of multiple instructions from his supervisors explaining the proper procedure for draining vehicle fluids, plaintiff was unresponsive and continued to perform his work incorrectly. (Dkt. 41). Plaintiff's supervisor, Larry Rempe, reported the problem to management, and plaintiff was issued a written warning for (1) insubordination, (2) negligence in the performance of duties, and (3) willful disregard of the

---

[5] Plaintiff agreed during his deposition that he was reinstated to an equivalent position and not laid off:

Q      So you were then back to where you were before you were fired the first time?
A      Right. Correct. Back and forth to the mill. They had me going to the mill when I got sick off the gas fumes.
Q      And do you recall when you started working back at Strong in Ferrous?
A      February. February, I can't remember the actual date but February 2010.

(Dkt. 46, Ex. 5 at 42:12-20).

employer's policies or procedures.  (Dkt. 41; Dkt. 46, Ex. 4, Ex. 9).  Upon receiving this warning, plaintiff became offended and began using foul language.  (Dkt. 41).  Plaintiff, however, claims that this discipline was unwarranted and that he used proper procedures when completing his assignment.  (Dkt. 46, Ex. 5 at 43-44).  Ferrous did not discharge plaintiff for this conduct, despite its entitlement to do so pursuant to the LCA.  (Dkt. 46 at 9).

Two weeks later, on April 27, 2010, plaintiff was involved in another violation of Ferrous' work rules.  (Dkt. 46, Ex. 10).  According to Lisa Carroll, Ferrous Environmental Health and Safety Manager, and Larry Rempe, plaintiff exhibited psychotic behavior, including arguing with himself, throwing metal hand tools, shouting, kicking equipment, hitting walls, sitting on the hoods of cars so they could not be processed, purposefully walking in front of loaders while they were in motion, and spilling gasoline on the floor.  (Dkt. 46, Ex. 4; Dkt. 57, Ex. 9).  This behavior was so disruptive that it caused all operations in the immediate area to be suspended for an hour and a half.  (*Id*).  Plaintiff, during his deposition, claimed not to remember having thrown tools or kicked the walls, etc., but admits to having shouted obscenities and to being "out of his head." [6]

---

[6] Plaintiff's deposition reads as follows:

A    I don't remember none of that, throwing tools or none of that.  Kicking the walls, punching the walls, jumping on hoods of cars, walking in front of loaders, a loader, no, I don't remember any of that.

Q    Is it possible, though, Mr. King, that those things happened and you don't remember because of your mental state because of the gas?

A    I would remember that and I don't so I would say no.

Q    So you deny that you were throwing tools?

A    Correct.

Q    You deny that you were throwing equipment?

A    Correct.

Q    Were you shouting obscenities?

A    I probably was shouting, I would say that.

Q    What were you shouting?

A    Just shouting, you know.  The gas fumes, just talking out of my head.  I can't quote it verbatim but I'm sure I was.

(Dkt. 53, Pl.'s Dep. at 50:4-25).  Plaintiff was written up for the following five violations of work rules: (1) engaging in unauthorized work stoppage or other work interference; (2) negligent conduct contributing to a serious safety hazard; (3) negligence in the performance of duties; (4) disregarding policies or procedures; and (5) stopping work prior to completion of a shift.  (Dkt. 46, Ex. 10).  As a result, plaintiff was terminated on April 29, 2010, in accordance with the terms of the LCA.

On May 3, 2010, plaintiff filed a grievance through the Union grievance process challenging his termination.  (Dkt. 46, Ex. 11).  After a panel hearing on May 25, 2010, during which both plaintiff and Ferrous had an opportunity to present their positions on the matter (*see* Dkt. 53, Pl.'s Dep., at 62-63), the Union communicated in a letter dated June 10, 2010, its decision not to proceed to arbitration of the grievance (Dkt. 46, Ex. 11).  Plaintiff does not claim that he was denied an opportunity to present his position, but rather that he simply disagrees with the Union's decision not to arbitrate.  (Dkt. 53, Pl,'s Dep. at 91:8-18).  As a result of the Union's decision, plaintiff's termination remained effective.

As against defendant Ferrous, plaintiff contends that he was the victim of discrimination on the bases of race, color, and age.  (Dkt. 1).  He asserts that each of the described instances of discipline – when he was discharged for walking off the job; when he was issued a written warning for failing to follow proper procedure in the course of his duties; and when he was terminated for the incident during which he screamed obscenities and allegedly threw tools – was unwarranted and motivated by racial animus or age-based discrimination.  (Dkt. 57 at 4, 7-8).

As evidence of the alleged race and age discrimination, plaintiff claims that two younger Ferrous employees, Demar Dalton and Larry Rempe, replaced him after his dismissal.  (*See* Dkt.

_____

(Dkt. 53, Pl's Dep. at 50:4-25).

46, Ex. 5 at 58).  Specifically, plaintiff alleges that "Larry Rempe, a younger white male, with less

seniority than plaintiff [was] assigned to take plaintiff's place at Strong Steel Plant #2," while

plaintiff was denied his former position as yard man when he returned from FMLA leave.  (Dkt.

57 at 6).  Plaintiff also claims that Demar Dalton, who had been previously laid off by Ferrous,

was reinstated after plaintiff's final termination.  (Dkt. 46, Ex. 5 at 58).  Ferrous asserts that it did

not hire anyone to replace plaintiff.  (Dkt. 46, Ex. 4 at ¶ 15).  Rempe has been employed by

Ferrous since 2005 (*id.* at ¶16), has never held plaintiff's position as a yard man, and was already

in the position of resource recovery technician when plaintiff began work in that position in

February, 2010 (Dkt. 59, Ex. 1 at ¶¶ 13-14).  Similarly, Dalton was hired by Ferrous on July 21,

2010, but has been employed only as a sorter and loader/operator, positions never held by

plaintiff.  (Dkt. 46, Ex. 4 at ¶¶ 17-21).

Ferrous argues that plaintiff cannot establish a prima facie case of either race or age

discrimination due to his lack of evidence.  Additionally, Ferrous asserts that given plaintiff's

behavior and disciplinary record, it has clearly articulated legitimate, nondiscriminatory reasons

for plaintiff's discharge, warning, and termination, which plaintiff is unable to demonstrate are

merely pretextual.

As against the Union, plaintiff claims coercion by the Union representatives in their efforts

to convince plaintiff to sign the LCA, as well as unfair representation in deciding not to pursue

plaintiff's grievance regarding his final termination on April 27, 2010.  (Dkt. 1).

The Union argues that: (1) plaintiff's claim is not timely under the statute of limitations;

(2) plaintiff is unable to meet the high burden of proof necessary to establish a breach of fair

representation; and (3) the Union and its representatives acted in good faith in representing

plaintiff during the LCA negotiations and in rendering its ultimate decision regarding plaintiff's

grievance.

## III.   ANALYSIS AND CONCLUSIONS

### A.   <u>Standard of Review</u>

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

B.      Title VII Claim Against Ferrous Processing & Trading Co.

Plaintiff has alleged that Ferrous discriminated against him on the bases of race and color, in violation of Title VII of the Civil Rights Act of 1964. In order to prevail in a Title VII employment discrimination claim, a plaintiff must provide either direct evidence of intentional discrimination by the defendant or circumstantial evidence that would allow an inference of discriminatory treatment. *Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1246 (6th Cir. 1995). When relying on circumstantial evidence, the plaintiff must establish the following elements, in accordance with *McDonnell Douglas*: (1) that he belongs to a protected group; (2) that he was subject to an adverse employment action; (3) that he was qualified for the position; and (4) that he was replaced by a person outside of the protected class or that similarly situated non-protected employees were treated more favorably. *Id.* If a plaintiff successfully establishes these four elements, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). If the defendant successfully supplies such a legitimate reason, the burden then falls on the plaintiff to demonstrate that this proffered reason is mere pretext. *Id.* at 804.

In the present case, plaintiff has not provided any direct evidence of racial discrimination, such as evidence of explicit racial animus motivating the employment actions. *See Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) ("Evidence of discrimination is not considered direct evidence unless a racial motivation is explicitly expressed."). For example, plaintiff has not alleged that racially derogatory remarks were made or that overtly discriminatory employment policies existed. In fact, plaintiff has admitted that no one at Ferrous ever made any racially derogatory statements toward him. [7] Therefore, the undersigned's analysis will focus on the

_____

[7] During his deposition, plaintiff not only admitted that he was not fired because of his race, but

framework of a case relying on circumstantial evidence.

Defendant appears not to contest that plaintiff has demonstrated the first three elements of a prima facie claim.  Instead, it argues that plaintiff has not established the fourth element of his prima facie case because of his failure to identify any individuals outside of the protected class who replaced him.[8]  The only two individuals who plaintiff mentioned during his deposition or in his briefs as possibly replacing him are Larry Rempe and Demar Dalton.[9]  Because Dalton, like

---

also admitted that he has no evidence of racial discrimination:

| | |
|---|---|
| Q | You're not claiming you were fired because you were black? |
| A | No. |

. . .

| | |
|---|---|
| Q | But you don't believe anyone fired you because you're black? |
| A | My personal opinion, I can't – nobody never said that to me or anything like that. |

. . .

| | |
|---|---|
| Q | But you don't have any evidence that they were treating you poorly because you were black, just because of the gas fumes? |
| A | We'll have to find that our on discovery. |
| Q | You don't have any right now? |
| A | Not to my knowledge. |

(Dkt. 46, Ex. 5 at 56:19-57:21).

 [8] Plaintiff has not alleged in any of his briefs to the court that other employees received more favorable treatment because of their race.  Nor does defendant address the issue of more favorable treatment in its briefs, beyond a passing mention of its inclusion in the elements of prima facie case, which it argues plaintiff is unable to establish.  Rather, consistent with plaintiff's factual allegations, defendant discusses only whether plaintiff was replaced by an employee outside plaintiff's protected racial class.  As noted in footnote 1, the court is unable to rewrite plaintiff's complaint and briefs to include claims that were never presented.  *See Botwright v. U.S. Postal Serv.*, No. 08-12998, 2011 U.S. Dist. LEXIS 9382 at *7 (E.D. Mich. Jan. 12, 2011).  Thus, the undersigned limits the following discussion to a consideration of plaintiff's potential replacement by an employee outside of his protected racial class.

 [9] Plaintiff's deposition testimony is contradictory on this matter, as he claims that he does not know whether or not he was replaced:

plaintiff, is a black male, he is a member of the same protected class as plaintiff and therefore cannot serve as a comparison.  Rempe, however, as a white male, is outside the protected class and therefore defendant's treatment of him is relevant.

Plaintiff claims that Rempe was reassigned to replace him after plaintiff's initial discharge, in August 2009, while plaintiff was denied his former position upon return from FMLA leave. Defendant denies that Rempe replaced plaintiff and asserts that he was employed with Ferrous before plaintiff's discharge.  Moreover, defendant states that Rempe has never been assigned to the position of yardman, plaintiff's position at the time of his initial discharge, and that he occupied the position of resource recovery technician at the time plaintiff was reinstated in February 2010.  Meanwhile, defendant's decision to eliminate the position of yardman after plaintiff's dismissal was motivated by adverse economic conditions that necessitated a general reduction in force.

An employee may be considered replaced "when another employee is hired or reassigned to perform the plaintiff's duties."  *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 Fed. Appx. 620, 624 (6th Cir. 2010).  Courts' analyses regarding the issue of replacement have not focused on the titles of the positions occupied by the employees, but rather look to whether the duties associated with the two positions are substantially similar such that it is a de facto replacement.  *See id.*  Here, defendant states that Rempe never held the title of yardman and

---

Q      Do you know if anybody replaced you at Ferrous?
A      Not that I know of.  I mean I'm sure by now somebody had to but no.
Q      Do you know who or if you were replaced?
A      I have been up there, I took some cars up and I seen Demar Dalton.  I don't know if he replaced me or not.
Q      So you don't know if you were replaced or who replaced you?
A      No, I don't know.

(Dkt. 46, Ex. 5 at 55:14-22).

contends in its brief that Rempe's "job duties were and are entirely different than the job being performed by Plaintiff," assertions uncontroverted by plaintiff.  Neither party, however, has provided descriptions of the duties for the yardman or resource recovery technician positions that would enable the undersigned to determine whether the two positions are substantially similar. Ultimately, such a showing constitutes a part of the plaintiff's burden of demonstrating a prima facie case.  Therefore, even construing these facts in the light most favorable to the plaintiff, he has not provided a sufficient factual basis supporting his allegation that Rempe was reassigned after plaintiff's discharge to a position that involved duties substantially similar to those performed by plaintiff.  Thus, plaintiff has failed to state a prima facie case of race-based employment discrimination.

Although the foregoing analysis is sufficient to justify a dismissal of the case, the undersigned finds that defendant has carried its burden of establishing legitimate and nondiscriminatory reasons for each of its disciplinary actions.  Firstly, defendant has presented facts indicating that the adverse employment actions taken against plaintiff were prompted by plaintiff's insubordination and bizarre, erratic behavior.  Plaintiff was discharged in August 2009 because he walked off the job in complete disregard of supervisor instructions denying him permission to do so.  Even if plaintiff had an appointment with Occupational Health, as he claims, he nonetheless was at fault for insubordination to his supervisors, as he failed to adequately notify them of this appointment and did not wait for their authorization to leave the work yard.  In April 2010, plaintiff was terminated again as a result of the serious incident during which he threw tools, kicked equipment, and screamed obscenities, such that all operations were halted for an hour and a half while the disruption was resolved.  While plaintiff disputes having kicked equipment and thrown tools, he admits to having shouted obscenities and been "out of his head."  The behavior

plaintiff admits to, by itself, is evidence of insubordination and merits termination pursuant to the terms of the LCA.  Certainly, both of the incidents discussed provide adequate, legitimate grounds for discipline and termination, especially given the complete lack of evidence suggesting that these employment actions were motivated by race rather than by plaintiff's conduct.  Moreover, defendant has supplied documentation supporting the fact that both instances of plaintiff's poor workplace conduct violated defendant's Uniform Rules and Regulations, an established, internal, written code of conduct applicable to all of its employees.

Secondly, to the extent that plaintiff challenges the written warning issued to him on April 14, 2010, this claim is unsuccessful.  Written warnings often do not qualify as adverse employment actions – the second element of stating a prima facie case – because they are not "materially adverse change[s] in the terms and conditions of employment."  *See Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999).  *See also Haynes v. Level 3 Commc'ns LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006) ("A written warning may be an adverse employment action only if effects a significant change in the plaintiff's employment status."); *McMillan v. Potter*, 130 Fed. Appx. 793, 797 (6th Cir. 2005) (concluding that a written warning in lieu of a suspension did not meet the definition of an adverse employment action); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (holding that written warnings do not qualify as adverse employment actions).  Furthermore, the issuance of a written warning is hardly adverse in light of the fact that defendant would have been justified in terminating plaintiff at that time, pursuant to the terms of the LCA.  Thus, plaintiff cannot challenge this action taken by defendant.

Lastly, plaintiff has presented no facts or evidence suggesting that these proffered nondiscriminatory reasons for the disciplinary actions were mere pretext for underlying racial animus.  *Cf. Hopson v. Daimlerchrysler Corp.*, 306 F.3d 427, 434-36 (6th Cir. 2002) (finding that

a plaintiff established pretext through evidence that defendant had rejected him from five different positions for which defendant admitted he was well-qualified and where defendant's legitimate, nondiscriminatory reasons for doing so were vague and failed to specify the manner in which the hired white employees were better qualified).  In the present action, plaintiff disputes the legitimacy of the discipline, but does not provide any evidence tending to show that defendant's nondiscriminatory reasons for terminating his employment were untrue, such as affidavits from co-workers who witnessed his conduct.  Plaintiff's denial of his work violations, by itself, is not enough to establish pretext on the basis of factual falsity.  *See Stephenson v. Amsted Indus.*, No. 09-CV-12267, 2010 U.S. Dist. LEXIS 141719 at *23-24 (E.D. Mich. Oct. 13, 2010) (relying on *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502-03 (6th Cir. 2007)).  Therefore, defendant has successfully carried its burden of establishing a legitimate, nondiscriminatory purpose for its employment actions, which plaintiff has failed to rebut with a showing that this proffered reason was pretextual.

      C.     <u>ADEA Claim Against Ferrous Processing & Trading Co.</u>

Plaintiff has also alleged that Ferrous discriminatorily discharged him because of his age, in violation of ADEA.  Under ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

The standard applied in evaluating an age discrimination claim is largely the same as that applied in the race discrimination context discussed above.  A plaintiff may present either direct or circumstantial evidence of the age discrimination.  *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007).  Where the plaintiff relies on circumstantial evidence, the court applies the

16

*McDonnell Douglas* burden-shifting standard, which requires the plaintiff to establish the following four elements comprising a prima facie case: (1) that he was a member of a protected age class (i.e., at least forty years old); (2) that he suffered an adverse employment decision; (3) that he was qualified for the job or promotion; and (4) that the employer gave the job to a younger employee. *Id.* at 524, 529 (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). If the plaintiff succeeds in establishing these four elements, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* at 524. In the event that the defendant makes such a showing, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is mere pretext for discrimination. *Id.*

In the present case, plaintiff has provided no direct evidence of age discrimination in the form of overtly discriminatory policies, derogatory statements by supervisors, or similar instances. Therefore, he must establish a prima face case of age discrimination according to the *McDonnel Douglas* standard. Defendant does not appear to contest plaintiff's ability to establish the first three factors, instead arguing that he is unable to demonstrate that he was replaced by a younger employee.[10] Again, the employees referenced by plaintiff as potentially replacing him are Larry Rempe and Demar Dalton. Specifically, plaintiff made the following claims during his deposition:

> Q  Okay. Do you have any evidence of that?
> A  Say Demar Dalton came back, Larry Rippie [sic], inexperienced under

---

[10] During his deposition, plaintiff alluded to the fact that Rempe, though younger, occupied a more senior position, as plaintiff's supervisor. However, as determined in footnote 8, he has not sufficiently alleged in any of his briefs to the court that either Rempe or Dalton received more favorable treatment than he. Likewise, defendant has not addressed the issue of more favorable treatment in its briefs, beyond a passing mention of its inclusion in the elements of prima facie case, which it argues plaintiff is unable to establish. Rather, consistent with plaintiff's factual allegations, defendant discusses only whether plaintiff was replaced by a younger employee. Thus, the undersigned limits the following discussion to a consideration of plaintiff's potential replacement by a younger employee.

me, yes.

Q   Because they were younger?
A   I would say yes.
Q   Any other basis for saying that your age was a factor?
A   Not that I can think of right now.
Q   And Demar Dalton and Larry were already working at Ferrous when you were terminated, right?
A   No, Demar was laid off.  The first time I was terminated they had just brought Larry Rippie back.  August of '09 they had just brought [Rempe] back from layoff because I was working in the building by myself getting sick off the gas fumes so they called him back.
                                    . . .
Q   Okay.  But when you were terminated in April of 2010 was Larry an employee of Ferrous?
A   Yes.
Q   Was Demar an employee of Ferrous?
A   No, he was on layoff status.
Q   And they brought him back?
A   Yes.  Because I seen him so I would have to say yes.

(Dkt. 46, Ex. 5 at 58:3-59:2).

Consistent with previous conclusions above, the undersigned cannot find that a material question of fact exists as to whether Rempe was reassigned to plaintiff's position after plaintiff was discharged for the first time, in August 2009.  Plaintiff has not made an adequate factual showing of the similarity of plaintiff's and Rempe's positions that would justify such a determination.  Therefore, plaintiff's assertion that Rempe replaced him because of his age is ineffective in stating a prima facie case of age discrimination.

Similarly, plaintiff has failed to support with sufficient facts his allegation that Dalton was hired to replace him.  According to defendant, while Dalton was hired on July 21, 2010, after plaintiff's final termination, he has served only as a sorter and loader/operator in a different yard than plaintiff, has never occupied the same or a similar position as plaintiff, and has entirely different duties than plaintiff.  These facts are uncontroverted by plaintiff; indeed, plaintiff has admitted that he does not know whether Dalton was hired to replace him.  (*See* Dkt. 46, Ex. 5 at

55:14-22 (as quoted in footnote 9)).  Thus, the undersigned cannot find that Dalton was hired to replace plaintiff.

In light of the foregoing discussion, plaintiff has failed to demonstrate a prima facie case of age discrimination.  Additionally, for the reasons examined above, defendant has successfully presented legitimate, nondiscriminatory reasons for its employment actions, which plaintiff has failed to rebut as merely pretextual.

    D.    <u>Unfair Representation Claim Against International Brotherhood of Teamsters</u>

The applicable statute of limitations for a claim of unfair representation by a union is six months.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983).  Such is the case even though plaintiff has not presented a hybrid § 301 breach of collective bargaining agreement/fair representation claim; Sixth Circuit case law has applied this six-month limitations period in cases involving unfair representation claims against the union, regardless of the presence of a § 301 claim.  *See Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335 (6th Cir. 1985); *see also Moore v. Int'l Bhd. of Elec. Workers, Local 58*, 51 Fed. Appx. 486, 487-88 (6th Cir. 2002); *Darden v. Local 247, Int'l Bhd. of Teamsters*, No. 95-1453, 1996 U.S. App. LEXIS 31067 (6th Cir. Nov. 26, 1996).

"[T]he timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action . . . ."  *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993).  In the present case, plaintiff claims two instances of unfair representation by defendant: during the course of the negotiation of the LCA and through the defendant's decision not to pursue plaintiff's grievance regarding his final termination.  In the first instance, plaintiff admits that he became aware of defendant's unfair representation and coercion on the date he signed the LCA, October 14, 2009.  In the second instance, plaintiff became aware

of defendant's decision to not pursue his grievance in a letter dated June 10, 2010.  Thus,

plaintiff's claims of unfair representation against defendant accrued on October 14, 2009, and on

June 10, 2010, respectively.   Plaintiff, however, did not file his lawsuit against defendant until

February 17, 2011, which is beyond the six-month statute of limitations in both instances.  The

fact that plaintiff filed a complaint with the EEOC is ineffective in tolling the statute of

limitations.  *See, e.g.*, *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465-66 (1975) (rejecting

the petitioner's argument that the statute of limitations should be tolled by the filing of an EEOC

complaint); *Adkins*, 769 F.2d at 335 ("An unfair representation claim is wholly independent of any

unfair labor practice charge before the NLRB.  An NLRB filing, therefore, does not toll or prevent

the accrual of an unfair representation claim." (citations omitted)).

Thus, plaintiff's unfair representation claim was not brought in a timely manner and is

barred by the six-month statute of limitations.

## IV.   RECOMMENDATION

Given the above conclusions, the undersigned **RECOMMENDS** that defendants' motions

to dismiss be **GRANTED** and that plaintiffs' complaint be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for

in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing

objections that raise some issues but fail to raise others with specificity will not preserve all the

objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 16, 2012                          s/Michael Hluchaniuk
                                               Michael Hluchaniuk
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 16, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: John J. O'Shea and Kevin J. O'Neill, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: Eric King, 225 Howard, Mount Clemens, MI 48043.

                                               s/Tammy Hallwood
                                               Case Manager
                                               (810) 341-7887
                                               tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Motions for Summary Judgment
*King v. Ferrous Processing*; Case Nos. 11-10609, 11-10660